UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:20-cr-00072-JAW-1 |
| | ) | |
| MARCUS MELLO | ) | |
| | ) | |
| Defendant | ) | |

**ORDER ON GOVERNMENT'S MOTION IN LIMINE TO ADMIT CERTAIN
RELEVANT COMMUNICATIONS AND RELATED DATA AND
DEFENDANT'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S
STATEMENTS**

In anticipation of trial, the Court rules on several evidentiary issues presented

by the parties, including the admissibility of cellphone text messages between the

defendant and others, the application of the rule of completeness, and the

admissibility of a defendant's admission that he must accept responsibility for an

alleged drug purchaser's death.

## I.   BACKGROUND

### A.   Procedural History

On October 8, 2020, a federal grand jury indicted Marcus Mello in a one-count

indictment, charging him with the distribution of fentanyl on May 8, 2020, a violation

of 21 U.S.C. § 841(a)(1), and claiming a forfeiture of property related to the alleged

crime.  *Indictment* (ECF No. 27).   On May 5, 2021, a federal grand jury issued a

superseding indictment against Mr. Mello, containing three counts and two forfeiture

allegations: 1) Count 1 echoed the single count in the original indictment, the May 8,

2020 fentanyl distribution charge, 2) Count 2 alleged that Mr. Mello possessed with

intent to distribute 40 grams or more of a mixture containing fentanyl on July 17, 2020, also an alleged violation of 21 U.S.C. § 841(a)(1), and 3) Count 3 alleged that Mr. Mello possessed a firearm, namely a CZ, model P-10, 9 mm pistol, in furtherance of the drug trafficking crime alleged in Count 2, an alleged violation of 18 U.S.C. § 924(c)(1)(A). *Superseding Indictment* at 1-3 (ECF No. 51). The superseding indictment contained two forfeiture allegations related to all three counts in the superseding indictment, the first demanding all property used to commit or facilitate the commitment of the offenses in Counts 1 and 2, including United States currency, and the second demanding forfeiture of the P-10 pistol described in Count 3 of the superseding indictment. *Id.* at 2-3.

On May 23, 2023, the parties moved jointly to continue trial and for a specially assigned trial date. *Jt. Mot. to Continue Trial and for a Certain Trial Date* (ECF No. 106). The Court granted the motion on May 25, 2023. *Speedy Trial Order* (ECF No. 107). On May 26, 2023, the Court set trial for August 28, 2023 through August 31, 2023. *Notice of Hr'g* (ECF No. 103). A jury was selected on August 1, 2023. *Min. Entry* (ECF No. 133).

On August 11, 2023, the Government filed a motion in limine, requesting a pretrial order allowing the admission of evidence of text, images, and data secured from the cellphones of Mr. Mello, A.K., an alleged drug purchaser, and C.C., one of the Government's witnesses. *Gov't's Mot.* in Limine *to Admit Certain Relevant Communications and Related Data* at 1-11 (ECF No. 139) (*Gov't's Mot. in Limine*). On August 18, 2023, Mr. Mello filed his response. *Def.'s Resp. to Gov't's Mot. in*

*Limine to Admit Certain Relevant Communications and Related Data* at 1-3 (ECF No. 145) (*Def.'s Opp'n*). On August 14, 2023, Mr. Mello filed a related motion in limine to exclude some of his statements to law enforcement. *Def.'s Mot. in Limine to Exclude Def.'s Statements* at 1-3 (ECF No. 142) (*Def.'s Mot. in Limine*). On August 18, 2023, the Government filed a response to Mr. Mello's motion in limine. *Gov't's Resp. in Opp'n to Def.'s Mot. in Limine to Exclude Def.'s Statements* at 1-4 (ECF No. 148) (*Gov't's Opp'n*).

In their motions, the parties refer to their trial briefs, which put forth their respective positions on these evidentiary issues. *See Gov't's Trial Br.* at 15-23 (ECF No. 126) (*Gov't's Trial Br.*); *Def.'s Trial Br.* at 4 (ECF No. 125); *Def.'s Suppl. Trial Br. Regarding Evid. Issues* at 1-7 (ECF No. 141) (*Def.'s Suppl. Br.*).

### B.    The Facts: An Overview[1]

On May 8, 2020, Kennebunk Fire Rescue was dispatched to a convenience store for a non-responsive female at 8:44 p.m. *Order on Mot. to Sever and Exclude Reference to Decedent's Death* at 3 (ECF No. 132) (*Order on Mot. to Sever*). The medical providers arrived six minutes later and observed two women in a motor vehicle, one was A.K., a known drug user, and she was slumped over in the passenger seat and non-responsive. *Id.* The driver of the vehicle was C.C. and, although responsive, she was lethargic and incoherent. *Id.* The medical providers smelled alcohol on A.K.'s breath and observed oral secretions draining, copious amounts of

---

[1]    To give a general overview of the facts, the Court has repeated the synopsis in its July 31, 2023 order, which was derived from Mr. Mello's motion. *See Order on Mot. to Sever* at 3 ("The Court sets forth a synopsis of the facts underlying the charges against Mr. Mello as he described them in his motion").

fluid in her mouth, and bruising and a hematoma on her head.  *Id.*  After several rounds of CPR and Narcan, the medical providers ceased their efforts and A.K. was pronounced dead at 9:23 p.m.  *Id.* at 1-2.  A search of A.K.'s cellphone revealed that she had taken Klonopin, and C.C. later disclosed that she and A.K. went to South Portland to purchase pills and had snorted some pills before returning to Kennebunk. *Id.* at 2.

A.K.'s body was taken to Bibber's Memorial Chapel and staff located in A.K.'s bra a small plastic bag with gold skulls and a black background containing ten blue pills imprinted with a "30" on one side and an "M" on the other.  *Id.*  Through New England Poison Control and drugs.com, law enforcement identified the pills as 30 mg doses of Oxycodone, which were later tested and found also to contain fentanyl.  *Id.* at 3-4.  The autopsy revealed a recent head injury, a blood alcohol level of 0.178%, and positive findings for fentanyl, hydrocodone, diazepam, cyclobenzaprine, and bupropion.  *Id.* at 4.  The law enforcement investigation led to Mr. Mello and the Government contends that Mr. Mello sold A.K. twelve pills on May 8, 2020 for $300 in South Portland.  *Id.*  It is these allegations that give rise to Count 1.  *Id.*

On July l7, 2020, law enforcement arrested Mr. Mello pursuant to a warrant for the distribution of fentanyl related to the events of May 8, 2020.  *Id.*  At the time of his arrest, Mr. Mello possessed a backpack and law enforcement obtained a search warrant for the backpack.  *Id.*  There were several containers in the backpack and inside one were multiple plastic baggies containing about 400 pills, which gave rise

to Count 2 of the superseding indictment, and inside another was a firearm, which gave rise to Count 3 of the superseding indictment. *Id.*

## II.    THE POSITIONS OF THE PARTIES

### A.    The Government's Motion

In its motion in limine, the Government first seeks a pretrial ruling on its proposal to authenticate the information extracted from the cellphones of Mr. Mello, A.K., and C.C. *Gov't Mot. in Limine* at 1-3. The Government then turns to urging the admissibility of cellphone messages between A.K. and Mr. Mello, *id.* at 3-6, between A.K. and an individual identified as W.E., *id.* at 6, between C.C. and Mr. Mello, *id.* at 6-7, and between Mr. Mello and an individual identified as Chop. *Id.* at 7-10. Lastly, it argues that certain summary charts of these text messages are admissible. *Id.* at 10-11.

### B.    Marcus Mello's Response

In his opposition, turning first to the authenticity issue, Mr. Mello says that the Court should reserve the authenticity decision for trial. *Def.'s Opp'n* at 1.

Mr. Mello objects to the admission of Government Exhibits 1, 2, 4 and 5 under Federal Rule of Evidence 1006. *Id.* at 1-2. Mr. Mello also objects under Federal Rule of Evidence 403 to the admission of messages between himself and Chop concerning business being slow because of all the deaths and no one wanting to die. *Id.* at 2-3 (quoting *Gov't's Mot. in Limine*, Ex. 5, *Text Messages Between Chopz and Mellowoodz* at 9). Alternatively, if the Court admits the Government's proposed exhibit, Mr.

Mello urges the Court to require the inclusion of other text messages between Chop and Mr. Mello based on the rule of completeness. *Id.* at 3.

### C.     Marcus Mello's Motion

Mr. Mello's motion is focused on statements that Mr. Mello made to law enforcement in which he admitted that even though he did not know the pills he sold to A.K. contained Fentanyl, he had to take responsibility for her death. *Def.'s Mot. in Limine* at 1. Mr. Mello contends that his statement is irrelevant and, even if relevant, its probative value is exceeded by its unfair prejudice. *Id.* at 2. Among other things, Mr. Mello points out that his statement to law enforcement was neither recorded nor in writing, and he questions what law enforcement told him before he made the acknowledgement. *Id.* at 2-3.

### D.     The Government's Response

Pointing out the low standard for relevancy, the Government argues that Mr. Mello's admission is relevant to whether on May 8, 2020, he sold the pills to A.K and to whether the pills contained Fentanyl and to his possession of pills on July 17, 2020. *Gov't's Opp'n* at 1-2. Furthermore, the Government maintains that even if the admission would be prejudicial to Mr. Mello, it would not be unfairly prejudicial, and the probative value exceeds any risk of unfair prejudice. *Id.* at 2-3.

## III.     DISCUSSION

### A.     Authenticity

The Court agrees with Mr. Mello that a ruling on whether specific documents have been properly authenticated under Federal Rule of Evidence 901(a) must await

6

trial, the specific item sought to be admitted, and the trial testimony that "the item is what it purports to be." FED. R. EVID. 901(a). The First Circuit recently summarized the standards by which the authenticity requirement must be measured:

> Rule 901(a) of the Federal Rules of Evidence states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). In applying this rule, the district court must evaluate "whether there is 'enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be.'" *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Rule 901(b) provides a non-exhaustive list of methods sufficient to authenticate evidence, including testimony from a witness with knowledge "that an item is what it is claimed to be." FED. R. EVID. 901(b)(1). A witness with knowledge may be "either a custodian or a percipient witness." *Blanchard*, 867 F.3d at 5 (quoting *Paulino*, 13 F.3d at 23). "This standard does 'not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity.'" *Id.* (quoting *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994)).

*United States v. Torres-Correa*, 23 F.4th 129, 133-34 (1st Cir. 2022).

> In *Holmquist*, the First Circuit wrote:

> There is no single way to authenticate evidence. In particular, the direct testimony of a custodian or a percipient witness is not a *sine qua non* to the authentication of a writing. *See Paulino*, 13 F.3d at 23. Thus, a document's "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," can, in cumulation, even without direct testimony, provide sufficient indicia of reliability to permit a finding that it is authentic. FED. R. EVID. 901(b)(4); *see also Paulino*, 13 F.3d at 23; *United States v. Newton*, 891 F.2d 944, 947 (1st Cir. 1989).

*Holmquist*, 36 F.3d at 167. The *Holmquist* Court also set forth the ultimate test:

> "If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury." *Id.* (quoting *Paulino*, 13 F.3d at 23).

*Id.* When addressing authenticity issues during trial, the Court will apply the standards of Rule 901 as explained by the First Circuit.

###### B. Cellphone Messages

Assuming the Government authenticates the cellphone messages it seeks to admit, the Court turns to the admissibility of the text messages into evidence.

###### 1. Messages Between A.K. and Marcus Mello

In his objection, Mr. Mello writes that he has "no quarrel" with the legal principles and authority cited by the Government for the admissibility of a party opponent's statements under Federal Rule of Evidence 801(d)(2). *Def.'s Suppl. Br.* at 4. Mr. Mello correctly concedes that under Federal Rule of Evidence 801(d)(2), an "opposing party's statement" is not hearsay when "[t]he statement is offered against an opposing party." FED. R. EVID. 801(d)(2). In this case, as Mr. Mello suggested, again assuming authentication, Mr. Mello's text messages to A.K. leading up to the alleged drug transaction between Mr. Mello and A.K., describing the time, place, quantity, and price of the drugs sold would be admissible under one or more of the provisions of Rule 801(d)(2). *See* FED. R. EVID. 801(d)(2)(A), (B), (E); *see* 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 801.30 (Mark S. Brodin & Joseph M. McLaughlin eds., 2d ed. 2023) ("A party's own out-of-court statements and statements that are attributable to a party are not hearsay when they are offered against that party").

As the First Circuit recently explained in *United States v. Cantwell*, 64 F.4th 396 (1st Cir. 2023), where a party opponent converses with a non-party, the party

opponent's statements may be admitted as admissions, but the responses of the non-party remain hearsay. *Id.* at 407. The third-party responses may, however, be allowed into evidence for the limited purpose of providing context for the party opponent's statements. *Id.* In other words:

> Statements by declarants other than the party-opponent can still be admitted in the context of 801(d)(2) evidence, where such statements are offered for a limited purpose -- such as providing an explanation for the party-opponent's portion of the conversation -- but are not admitted for their truth.

*Id.*; *United States v. Pérez-Vásquez*, 6 F.4th 180, 197 (1st Cir. 2021) (holding that statements by a non-testifying witness may be admitted under Rule 801 "only to provide context for statements made [by the party-opponents] in the conversation and make them intelligible to the jury, not for their truth").

### 2. Messages Between A.K. and W.E.

The Government's motion refers to some text messages on May 8, 2020, the day of the alleged drug deal and A.K.'s death, between A.K. and a person identified in the Government's motion only as W.E. *Gov't's Mot.* at 6 (referring to Ex. 2, *Text Messages between W.E. and A.K.*) (*W.E. and A.K. text messages*). The messages appear to be exchanges between W.E. and A.K. about A.K.'s efforts to obtain drugs from Mr. Mello. *Id.* The Government says that the messages are admissible as evidence of A.K.'s future intent. *Id.* The Government then writes that W.E. will be called as a witness and will confirm, as corroborated by the text messages, that the cellphone that communicated with her and by extrapolation with Mr. Mello was in fact A.K.'s cellphone, thereby confirming the reliability of the forensic extraction of

A.K.'s cellphone. *Id.* The Court could not locate any objection to this text exchange in Mr. Mello's various filings. Absent an objection, the Court will at this point assume that the exchanges between W.E. and A.K. are admissible for the reasons the Government described.

### 3.   Messages Between Marcus Mello and C.C.

The Government is seeking to introduce text exchanges from May 9, 2020 between Mr. Mello and C.C., the person who drove A.K. to the alleged drug deal. *Gov't's Mot.* at 6-7 (referring to Ex. 3, *Text Messages between Marcus Mello and C.C.*) (*Mello and C.C. text messages*). The exchange is:

CC:  Mellow

Mello: Who's this

CC: C.C.
     A.K. is dead

Mello: What

CC: She died doing 1 of your pills

Mello: Hold up

CC: What's in those pills

Mello: Tf am I supposed to know she wanted perks so I found them for her

CC: That's all they were?

Mello: Yeah

CC: Ok thanks

*Id.*[2]

The Government argues that Mr. Mello's statements to C.C. should be admitted as admissions and depicts C.C.'s statements as the predicate for adoptive admissions under Federal Rule of Evidence 801(d)(2) and (d)(2)(B). *Id.* Mr. Mello objects to the admission of this exchange on the ground that the factual predicates for the admission of these exchanges have not been satisfied, including (1) that the statement was made in Mr. Mello's presence, (2) in circumstances under which an innocent person would deny the statements, (3) the Government provided a sufficient foundation for a jury to infer that Mr. Mello heard, understood, and acquiesced in the statement, and (4) it was clear that Mr. Mello by oral declaration or gesture denoted by his silence that the statement was true. *Def.'s Suppl. Br.* at 4-5 (citing *United States v. Lopes*, 578 F. Supp. 3d 158 (D. Mass. 2021); and *United States v. Lafferty*, 503 F.3d 293 (3d Cir. 2007)); *see also Ferring Pharms., Inc. v. Braintree Labs., Inc.*, 215 F. Supp. 3d 114, 121-22 (D. Mass. 2016).

The exchange between C.C. and Mr. Mello does not fit within the adoptive admission cases, like *Lopes*, where the defendant was silent in circumstances where a response would be expected. *See, e.g.*, *Higgs v. United States*, 711 F. Supp. 2d 479, 516-17 (D. Md. 2010) (where an incarcerated defendant was read a *Washington Post*

---

[2]     The Government failed to provide the complete exhibit. The Government's memorandum cites exchanges between C.C. and "Mellow" that do not appear in Exhibit 3. For example, in the memorandum, the Government says that C.C. told Mr. Mello that A.K. had died after "doing one of your pills," and that Mr. Mello responded, "Tf am I supposed to know she wanted perks so I found them for her." *Gov't's Mot.* at 6. The complete exchange appears in the Government's trial brief and its opposition to the motion to sever. *See Gov't's Trial Br.* at 5; *Gov't's Resp. in Opp'n to Def.'s Mot. to Sever Count One and Exclude Any Reference to Decedent's Death* at 4 (ECF No. 113). The Court included the complete exchange consistent with the Government's argument and Mr. Mello's opposition.

article saying the slayings were precipitated by an argument between the defendant and another person at the defendant's apartment, to which the defendant made no response).

Here, Mr. Mello affirmatively responded to C.C.'s text messages and admitted that he sold the pills to A.K., that he thought they were Percocet, and that he did not know what was in them. Thus here, as Mr. Mello admitted that he sold the pills to A.K., the admissibility of his statement falls within 801(d)(2)(A), an admission by a party opponent, a legal principle Mr. Mello says he has "no quarrel" with.

Perhaps the Government will argue that Mr. Mello's failure to assert in these exchanges that he did not sell the pills to A.K. constitutes an adoptive admission. If the Government argues that the jury should draw an inference from the admission that Mr. Mello would have denied being the seller, the reasonableness of the inference must be resolved by a jury. *See United States v. Duval*, 496 F.3d 64, 76 (1st Cir. 2007) (leaving the actual acquiescence of the defendant to the jury).

Assuming the Government provides a sufficient foundation for the authenticity of the text exchanges between C.C. and Mr. Mello, the Court concludes they are admissible as admissions and as to C.C.'s responses, to provide context for Mr. Mello's admissions.

### 4.    Text Messages Between Marcus Mello and Chop/Chopz

The fourth and fifth exhibits in the Government's motion are a series of text exchanges between Mr. Mello and "Chop" and "Chopz" from April 21, 2020 through July 13, 2020, including an image of a FedEx delivery slip. *Gov't's Mot.* at 7-10

(referring to Exs. 4-5, *Text Messages Between Mello and Chop/Chopz*).  In its motion, the Government says that it recovered these messages from Mr. Mello's cellphone, that one of the messages is evidence of a drug delivery to Mr. Mello on May 8, 2020, the date A.K. died, and that one message transmitted a photograph of a bag of pills. *Id.*  The Government represents that it will produce evidence that Chop and Chopz are the same person.  *Id.* at 7, n.5.  The Government also says that Mr. Mello's statements are admissible as admissions under Federal Rule of Evidence 801(d)(2). *Id.* at 8.  It argues that Chop/Chopz's statements are admissible as statements of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E).  *Id.*

Mr. Mello cautions the Court against the admission of the statements of co-conspirators, reciting the familiar words of Justice Robert Jackson in *Krulewitch v. United States*, 336 U.S. 440 (1949), stating that a conspiracy charge makes for "an especially difficult situation for the defendant" and worrying about the "loose application of [the] rules of evidence." *Def.'s Suppl. Br.* at 5 (quoting *Krulewitch*, 336 U.S. at 453-54).  Mr. Mello also contends that some of the statements will not survive admissibility under Rule 403.  *Def.'s Opp'n* at 3.

In *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977), the First Circuit set forth the standards under which a trial court is to assess the admissibility of co-conspirator statements: "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible." *Id.* at 23.  "In this Circuit, this determination is commonly referred to as a *Petrozziello*

ruling." *United States v. Pena*, 24 F.4th 46, 57 n.5 (1st Cir. 2022). "Significantly, the trial court is not required to decide the *Petrozziello* question prior to admitting [purported co-conspirator] statements under Rule 801(d)(2)(E), but may 'admit the statements provisionally, subject to its final *Petrozziello* determination at the close of all the evidence." *Id.* (quoting *United States v. Newton*, 326 F.3d 253, 257 (1st Cir. 2003)).

Consistent with *Petrozziello*, the Court will provisionally admit the co-conspirator statements and will rule finally at the close of all the evidence. As a corollary, having reviewed the text messages, the Court observes that the content of the text messages between Chop/Chopz and Mr. Mello are sufficient evidence of conspiratorial discussions to allow for provisional admission.

### C.   The Rule of Completeness

Mr. Mello objects to some of the Government exhibits as incomplete under Federal Rule of Evidence 106. *Def.'s Opp'n* at 1-3. Rule 106 provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

FED. R. EVID. 106. The common law rule of completeness provides that a party "against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder." *Hemphill v. New York*, 142 S. Ct. 681, 693 (2022) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988) (quoting 7 J. WIGMORE, EVIDENCE, § 2113, p. 653 (J. Chadbourne rev. 1978))). As the First Circuit has written, Rule 106 "is meant to prevent the jury from being misled by reading or

hearing a statement 'out of context.'" *United States v. Altvater*, 954 F.3d 45, 49 (1st Cir. 2020); *Cantwell*, 64 F.4th at 407 n.14 (Rule 106 "allows a party to expand an excerpt of a recorded statement admitted against him to prevent the proponent of the evidence from cherry-picking damaging excerpts").

Mr. Mello has not provided enough information for the Court to issue a pretrial ruling on whether this rule applies to specific excerpts presented by the Government, but the Court will of course apply Rule 106 as interpreted by the First Circuit during this trial.

### D. Marcus Mello's Saved Cellphone Number

In his supplemental trial brief, Mr. Mello says that the Government intends to introduce a notation in A.K.'s cellphone in which she saved his telephone number, and he objects to the admission of his cellphone number as hearsay. *Def.'s Suppl. Br.* at 7. Given the sequencing of the memoranda, the Government has not yet responded to how it intends to introduce this evidence under the Rules of Evidence and the Court will await the Government's response before ruling.

### E. Marcus Mello's Acceptance of Responsibility

In his motion in limine, Mr. Mello seeks a pretrial ruling excluding his statement to law enforcement shortly after his arrest and after he had been read *Miranda*[3] warnings. *Def.'s Mot. in Limine* at 1-3. Mr. Mello points to his statement reflected in the police report "[t]hat he didn't know the pills he sold to A.K. contained Fentanyl, but he also acknowledged that he needed to take responsibility for causing

---

[3]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

her death." *Id.* at 1.  Mr. Mello says his acceptance of responsibility is not relevant to the issues in the case since the Government has not charged him with A.K.'s death. *Id.* at 2.  He also attacks the underpinning of the statement, noting that the statement was not recorded and not written and only appears in a police report.  *Id.* at 2-3.  The Government responds that Mr. Mello's statement is relevant to whether he sold the pills to A.K. and rejects his concerns about the accuracy of the statement.  *Gov't's Opp'n* at 1-4.

The Court already ruled that evidence of A.K.'s death will be admissible at trial. *Order on Mot. to Sever* at 15-17.  The Court has also received a proposed limiting instruction from Mr. Mello concerning evidence of A.K.'s death.  *Proposed Jury Instruction (Limiting Instruction Re: Death)* (ECF No. 144).

As evidence of A.K.'s death will otherwise be before the jury and as the jury will receive a limiting instruction as to the limited use of that evidence, the Court concludes that the evidence of Mr. Mello's admission of responsibility is likely admissible at trial, assuming the Court will give a limiting instruction as to its proper use by the jury.  The Court cannot reach in this order whether a jury will believe that Mr. Mello accepted responsibility as law enforcement has described or whether it will discount the statement for the reasons Mr. Mello proposes in his motion.  The Court will leave this credibility determination to the jury.

## IV.  CONCLUSION

The Court GRANTS in part and DISMISSES in part the Government's Motion in Limine to Admit Certain Relevant Communications and Related Data (ECF No.

139) and DENIES Defendant's Motion in Limine to Exclude Defendant's Statements (ECF No. 142).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of August, 2023

17